UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MAUREEN N., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:17-cv-00375-GZS |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

On Plaintiff Maureen N.'s application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court vacate the administrative decision.

## The Administrative Findings

The Commissioner's final decision is the July 15, 2016, decision of the Administrative Law Judge. (ALJ Decision, ECF No. 9-2, R. 27.)[1] The ALJ's decision

---

[1] There is a prior ALJ decision in the record, which decision the Appeals Council remanded for further proceedings related to Plaintiff's finger fracture. As for the decision presently before the Court, the Appeals

tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of degenerative disk disease of the lumbar spine, status post-left, fifth (small) finger fracture, organic mental disorder/borderline intellectual function, affective disorder/depression, and anxiety-related disorder/generalized anxiety. (ALJ Decision, R. 30 – 33.) The ALJ determined that despite her impairments, Plaintiff has the residual functional capacity (RFC) to perform light work, provided the work consists of no more than simple, routine tasks and does not require contact with the general public. (R. 33 – 38.) Based on the stated RFC, Plaintiff's age and other vocational factors, and the testimony of a vocational expert, the ALJ found that Plaintiff can no longer perform past relevant work involving medium exertion (home care attendant), but can transition to other substantial gainful activity, including the representative jobs of bench assembler (DOT # 706.684-022), checker I (DOT # 222.687-010), and dry cleaner (DOT # 589.685-038). (R. 38 – 39.) The ALJ ultimately determined that Plaintiff was not under a disability for the period between the date of alleged onset, May 30, 2008, and the date of the ALJ's decision, July 25, 2016. (R. 40.)

**Standard of Review**

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record

---

Council found no reason to review that decision, making it the Commissioner's final decision on Plaintiff's claims.

contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## Discussion

Plaintiff argues that the ALJ's decision should be vacated and her claims remanded for further proceedings because (a) the ALJ failed to include tinnitus as one of Plaintiff's severe impairments at step 2, (b) the ALJ disregarded a treating source statement and an MRI report when assessing Plaintiff's RFC, and (c) the ALJ failed to evaluate properly the way Plaintiff's low IQ would impact Plaintiff's ability to perform the jobs identified by the vocational expert at step 5. (Statement of Errors, ECF No. 11.)

### A. Step 2 Omission of Tinnitus

Plaintiff saw William Chasse, M.D., an otolaryngologist, in January, 2016, for an evaluation of tinnitus. Plaintiff described hearing "a high pitch noise most of the time," needing "to have people repeat themselves at times," and a pain rating of 0/10. (Ex. 50F, ECF No. 9-10, R. 1361.) Dr. Chasse suggested a treatment plan for an audiogram following debridement of cerumen (wax) impaction. (R. 1363.) The record lacks evidence of any follow-up treatment for the condition.

At the hearing before the ALJ on June 2, 2016, Plaintiff did not identify hearing difficulty as an issue. (R. 73, 83, 90 – 91, ECF No. 9-2.) Nevertheless, Plaintiff argues the ALJ committed reversible error because the regulations state that an adjudicator will "consider all evidence in your case record," and because the jobs cited by the ALJ at step 5 are defined in the Dictionary of Occupational Titles as imposing moderate or loud noise levels. (Statement of Errors at 10, citing 20 C.F.R. § 404.1520(a)(3)(ii) and Dictionary of Occupational Titles definitions.)

At step 2 of the sequential evaluation process, a social security disability claimant must establish the alleged conditions are severe, but the burden is de minimis, and is designed merely to screen groundless claims. *McDonald v. Sec'y of HHS*, 795 F.2d 1118, 1123 – 24 (1st Cir. 1986). The ALJ may find that an impairment or combination of impairments is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85–28). In other words, an impairment is severe if it has more than a minimal impact on the claimant's ability to perform basic work activities on a regular and continuing basis. *Id.*

The omission of a severe impairment at step 2 does not necessarily require the reversal of the administrative decision. To justify remand, a plaintiff must provide medical evidence regarding the limiting effects of the impairments on which the step 2 challenge is based. *LaBonte v. Astrue*, No. 2:09-cv-00058-GZS, 2010 WL 2024895, at *2 (D. Me. May 18, 2010). Failure to do so not only undermines a step 2 challenge, but renders harmless

4

any supposed error. *Beaulieu v. Colvin*, No. 1:14-CV-00335-DBH, 2015 WL 4276242, at *2 & n.5 (D. Me. July 14, 2015). In other words, even if a plaintiff establishes that the ALJ erred at step 2, remand is only appropriate if the plaintiff also demonstrates that had the ALJ not erred, the result would have been different. *Bolduc v. Astrue*, No. 1:09-cv-00220-JAW, 2010 WL 276280, at * 4 n.3 (D. Me. Jan. 19, 2010).

First, given the limited record regarding the condition and the lack of follow-up evaluation, the ALJ did not err when she did not find Plaintiff's hearing issue to constitute a severe impairment. In addition, even if the ALJ erred when she failed to include tinnitus as a severe impairment based on the single treatment note in the record, Plaintiff has not cited any record evidence regarding the limiting effects of the condition. More specifically, Plaintiff has not cited a source statement that suggests a vocational limitation as the result of the tinnitus diagnosis. Plaintiff also did not inquire of the vocational expert whether the tinnitus symptoms described in the treatment note (0/10 pain with occasional interference with hearing) would preclude performance of the jobs identified by the vocational expert. The ALJ's failure to find tinnitus as a severe impairment, even if supported by the record, does not warrant reversal of the administrative decision.

**B. Treating source statement and MRI report - lumbar degenerative disk disease**

Plaintiff treated with Eugene Charlebois, D.O., of Inland Family Care, for lumbar degenerative disk disease. In a treatment note of June 2, 2014, based on Plaintiff's report or worsening pain and tingling in the right leg, with symptoms for several weeks, Dr. Charlebois noted that Plaintiff's degenerative disk disease had "deteriorated." (Ex. 48F, R. 1317 – 1320, ECF No. 9-9.) Dr. Charlebois instructed Plaintiff to perform "no lifting

from floor height at all" and no more than 20 pounds from counter height, continue use of prednisone and hydrocodone-acetaminophen, and follow-up in six weeks. (R. 1320.) On July 30, 2014, Dr. Charlebois ordered an MRI. The MRI, interpreted by Anthony Van Dyck, M.D., revealed, at L4-5, "what may be indirect sign of tiny annular tear and minimal protrusion of disk centrally indenting the thecal sac slightly," reflecting that "the thecal sac impression has progressed slightly since 2012." (R. 1321.)

Plaintiff argues the ALJ erred because she did not adequately consider the evidence generated as the result of the treatment by Dr. Charlebois. Plaintiff thus contends that the ALJ's finding of the limiting impact of degenerative disk disease is not supported by substantial evidence on the record given that the ALJ did not address evidence suggesting an annular tear and Dr. Charlebois's opinion in 2014 that Plaintiff must not lift anything from floor height. (Statement of Errors at 10 – 11.)

Defendant maintains that the record reflects that the ALJ addressed the 2014 MRI, that Plaintiff reported resolution of her pain, and that Dr. Charlebois removed the restrictions, which suggests Plaintiff's return to baseline. (Response at 14 – 15.) Additionally, Defendant notes that Plaintiff testified that her maximum lifting ability is twenty pounds, which corresponds with light work. (*Id.* at 15.)

Regarding Plaintiff's long-term ability to perform the physical demands of work-related activities, the ALJ considered Dr. Charlebois's medical source statement dated July 1, 2013, through which Dr. Charlebois limited Plaintiff's ability to lift to no more than 10 pounds (Ex. 51F), without a durational limitation on Plaintiff's ability to stand or walk, but with a need to alternate sitting and standing. The ALJ also considered the assessment of

6

Disability Determination Services physician J.H. Hall, M.D., dated February 23, 2011, through which Dr. Hall assessed a capacity for medium exertion and for 6 hours of standing/walking and 6 hours of sitting in a workday. (Ex. 5A, R. 180 – 81.)

The ALJ did not find Dr. Charlebois's assessment reliable, in part because Dr. Charlebois completed the evaluation form with Plaintiff's assistance (R. 36, citing Ex. 45F), and because Dr. Charlebois made no remarkable contemporaneous findings upon physical examination apart from "lumbar paraspinal muscle spasm." (*Id.*, citing 45F:4, R. 1294.) The ALJ, however, also did not rely entirely on Dr. Hall's RFC assessment "since new evidence received at the hearing level shows that the claimant is more limited than determined by the DDS consultant."[2] (R. 38, citing Exs. 4A, 5A.)

Where the non-examining agency expert has reviewed the material evidence contained in the medical record, and the ALJ has rejected the relevant opinion of a treating source for "good reason," the opinions of the agency expert about the claimant's RFC can constitute substantial evidence of a claimant's RFC. *Alazawy v. Colvin*, No. 2:16-cv-240-JHR, at *6 – 7 (D. Me. Dec. 26, 2016).

This Court has observed:

> There is no hard and fast rule requiring renewed evaluation by a consulting expert every time a disability claimant experiences new medical events or obtains new diagnoses in the interval between the initial DDS consultant's RFC assessment and the date of the administrative hearing. Particularly where pain is concerned, an Administrative Law Judge has the unenviable duty to make a credibility determination, 20 C.F.R. §§ 404.1529(a), (c)(1), (c)(4), 416.929(a), (c)(1), (c)(4); SSR 96–7p, and the evidence contained in

---

[2] Dr. Hall explained the exertional limitations he assessed by referencing Plaintiff's 2007 "spine films." (R. 181.) Dr. Hall thus did not review the 2012 MRI (Ex. 41F), the 2014 MRI (Ex. 46F), or the treatment records associated with the provider's decision to order the films.

7

new medical records may, in some cases, simply dovetail with the credibility determination. Where the dividing line exists is difficult to determine and will depend on the particular facts of a case.

*Bachelder v. SSA Comm'r*, No. 1:09-cv-436-JAW, 2010 WL 2942689, at *6 (July 19, 2010), *report and recommendation adopted*, 2010 WL 3155151 (D. Me. Aug. 9, 2010). *See also Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule." (citations and internal quotation marks omitted)).

Here, while the ALJ's RFC assessment does not incorporate the limitations found by Dr. Charlebois in July 2013, the RFC assessment is in accord with Plaintiff's subsequent statements and Dr. Charlebois's subsequent findings. As the ALJ noted, at her last visit with Dr. Charlebois in August 2014, Plaintiff reported that her right-sided low back pain had completely resolved. (R. 37; R. 1313.) Dr. Charlebois' findings at the session also indicated "normal heel and toe walking," and "negative straight leg raising." (R. 1315.) Dr. Charlebois' plan included ice and stretching, but did not include any lifting restrictions as it had following prior sessions. (Compare R. 1316 with R. 1292.)

Given Plaintiff's report of improvement, the lack of significant findings upon physical examination, and the absence of any lifting restrictions, the most recent records generated by Dr. Charlebois' care are not inconsistent with the ALJ's RCF finding. Furthermore, given that the 2014 medical evidence demonstrated either an improvement

8

or very little change in Plaintiff's condition since 2012, the fact the ALJ relied in part on Dr. Hall's opinion was not error. In short, under the circumstances in this case, the fact the ALJ's RFC finding was not in accord with the restrictions Dr. Charlebois previously imposed was not error.

## C. Dictionary of Occupational Titles aptitude provisions and related vocational expert opinion

Citing records that reflect Plaintiff's IQ score as 73 (full scale) or 77 (verbal), Plaintiff argues that the ALJ erred by concluding that Plaintiff could perform any substantial gainful activity that is defined in the Dictionary of Occupational Titles (DOT), Revised Handbook, as having a General Learning Ability requirement that excludes performance by those with IQ scores/aptitudes in the lowest 10 percent of the population. According to Plaintiff, all of the jobs identified in the ALJ's step five finding would, under this approach, be precluded by the DOT. (Statement of Errors at 3 – 9.) Plaintiff submitted the affidavit of David Meuse, a vocational expert, to support her contention. (Ex. 42E, ECF No. 9-6, R. 662.) Mr. Meuse opines that a person in the borderline IQ range for full scale, verbal, processing, and numeric, with 4th to 6th percentile scores, would be precluded from performing "[a]lmost all competitive employment," and would be "virtually guarantee[d]" to be unable "to maintain a competitive pace." (*Id.*, R. 663.)

In contrast to Mr. Meuse, Jill Brown, the vocational expert the ALJ called to testify at the hearing, asserted that based on her experience and training, a person with Plaintiff's IQ scores would not be precluded from the occupations she identified, i.e., bench assembler, checker I, and dry cleaner. (Hr'g Tr. at 45 – 46, 48 – 50, ECF No. 9-2, R. 96 –

97, 99 – 101.) Ms. Brown acknowledged that her testimony conflicted with the way a person's aptitude is viewed in the DOT, but she explained that her opinion was based on her training and experience as a vocational expert. (Hr'g Tr. at 48, R. 99.)

After identifying the jobs Plaintiff could perform, the ALJ wrote, "[p]ursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the DOT." (R. 39.) The record, however, is not clear that the expert's testimony is consistent with the DOT ratings given Plaintiff's IQ. In fact, at one point during the hearing, when asked whether her opinion was consistent with the DOT, the expert replied, "I don't know. I would probably say no." (R. 99.) In addition, the ALJ appears to suggest that she did not consider the DOT ratings relevant to Plaintiff's IQ when she wrote, "[a]gency policy prohibits consideration of DOT ratings for temperaments and aptitudes." (R. 40.) [3]

---

[3] Defendant has not asserted that the aptitude ratings are improper considerations at step 5 of the sequential evaluation process. In *Jenkins v. Colvin*, No. 1:14-cv-285-DBH, 2015 WL 5093290 (D. Me. Aug. 28, 2015), the Court explained that aptitude is a component of the DOT:

> "General learning ability" is the "ability to 'catch on' or understand instructions and underlying principles; the ability to reason and make judgments. Closely related to doing well in school." U.S. Dep't of Labor, The Revised Handbook for Analyzing Jobs 9–3 (1991). General learning ability—along with ten other job-related "aptitudes"–was not included in the final published edition of the DOT. See U.S. Dep't of Labor, Dictionary of Occupational Titles 180 (Price Marker), 248 (Cleaner, Housekeeping), 289 (Flower Picker) (4th ed., Revised 1991). However, the aptitudes have been included as part of the DOT entries in online sources, *see*, *e.g.*, DICOT 405.687–010, 1991 WL 673329 (Flower Picker), and courts generally have treated general learning ability as a component of the DOT job titles. *See*, *e.g.*, *Browning v. Colvin*, 766 F.3d 702, 709–12 (7th Cir. 2014); *Griffith v. Comm'r of Soc. Sec.*, 582 Fed. App'x 555, 565 fn. 6 (6th Cir. 2014); *Bowie v. Colvin*, No. 2:12–cv–205–DBH, 2013 WL 1912913, at *10 (D. Me. Mar. 31, 2013); *Gurney v. Soc. Sec. Admin. Comm'r*, 880 F. Supp. 2d 174, 177 (D. Me.2012).

*Id.* at *2, n.8. The Court also observed that "the SSA regulations generally provide that basic work activities include 'the abilities and aptitudes necessary to do most jobs,' 20 C.F.R. § 416.921(b) (emphasis added), and the ALJ may take administrative notice of reliable job information outside of information in the DOT.

While the DOT ratings are not controlling, and although an ALJ can rely on the expertise of a vocational expert, the ALJ must at least address any conflicts between the ratings and the expert testimony. Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions, SSR 00-4P, 2000 WL 1898704, at *4 (S.S.A. Dec. 4, 2000). [4] In this case, neither the vocational expert nor the ALJ addressed in any meaningful way the conflicts, and the basis by which any conflict was resolved is not otherwise apparent on the

---

*See* 20 C.F.R. § 416.966(d) (outlining nonexclusive list of sources).'" *Id.* In *Jenkins*, the Court ruled that the ALJ erred by finding that such questions presented a "vague" scenario and addressed a matter "beyond the expertise of the vocational expert." *Id.* at *2. Similarly, in *Dishman v. Colvin*, No. 2:16-cv-82-JAW, 2016 WL 7477540 (D. Me. Dec. 29, 2016), the Court remanded for further proceedings where, inter alia, the ALJ dismissed a vocational expert affidavit as "inappropriate" that certain test scores would preclude the claimant's performance of the jobs identified by the testifying vocational expert at the hearing. *Id.* at *3 – 4.

[4] Ruling 00-4p requires an adjudicator to examine any conflicts that exist between vocational expert testimony and the provisions of the Dictionary of Occupational Titles.

> When a VE [vocational expert] or VS [vocational specialist] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.
>
> …
>
> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p, 2000 WL 1898704, at *4.

record. As Ruling 00-4p reflects, the ALJ must examine any conflict between vocational expert testimony and the DOT. In this case, although the ALJ made reference to the Ruling, the ALJ did not adequately address the conflict between the DOT and the vocational expert testimony. Remand, therefore, is appropriate for the ALJ to assess, given Plaintiff's IQ, Plaintiff's aptitude to perform the identified jobs in the context of the DOT ratings and the vocational expert's testimony.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court vacate the final administrative decision and remand for further proceedings.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 8th day of August, 2018.